**FEDERAL TRADE COMMISSION,**
Appellant,

v.

**APPROXIMATELY 500 DOZEN FLAM-
MABLE CHENILLE BERETS,**
more or less

**M. Grossman & Son, Inc., and Betmar
Hats, Inc., Claimants.**

**No. 71–1197.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 27, 1972.

Decided April 25, 1972.

Charles C. Moore, Jr., Federal Trade Commission, Washington, D. C., for appellant.

Albert H. Brodkin, Keating & Brodkin, New York City, for appellee.

Before McLAUGHLIN, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case involves an appeal by the Federal Trade Commission from a ruling of the United States District Court for the District of New Jersey that certain flammable berets were exempt from seizure under the terms of the Flammable Fabrics Act, 15 U.S.C. § 1191 et seq. (1970). The berets in question were manufactured in Italy and were imported into this country by claimants-appellees, Betmar Hats, Inc. and M. Grossman & Son, Inc., in August of 1970. The Federal Trade Commission (Commission) obtained several of these berets in September of 1970 and subjected them to flammability tests in accordance with Commercial Standard 191–53 of the Department of Commerce. As a result of these tests, the Commission determined that the berets were dangerously flammable and that their introduction

into commerce violated Section 3 of the Flammable Fabrics Act, 15 U.S.C. § 1192 (1970). The Commission then instituted a seizure action[1] pursuant to Section 6(b) of the Flammable Fabrics Act, 15 U.S.C. § 1195(b) (1970), which provides:

"(b) Whenever the Commission has reason to believe that any product has been manufactured or introduced into commerce . . . in violation of section 1192 of this title, it may institute proceedings by process of libel for the seizure and confiscation of such product . . . in any district court of the United States within the jurisdiction of which such product . . . is found."

The complaint alleged in paragraph 4, inter alia, that the berets "[w]hen worn, . . . form a covering for the ears, forehead, part of the neck, and the top of the head" and claimants concede the accuracy of this allegation for purposes of the decision from which this appeal is taken (see paragraph 4 of answer).

Claimants asserted ownership of the seized berets in accordance with Supplemental Rule C(6), F.R.Civ.P., and filed an answer. Claimants then moved for dismissal of the claim and summary judgment, and supported their motion with three sworn affidavits. The Commission filed a cross-motion for summary judgment and oral arguments were heard on these cross-motions on December 14, 1970. At this oral argument and in their papers claimants contended that flammability standards only apply to hats under Section 4(a) of the 1953 Flammable Fabrics Act and that such provisions had been repealed by the 1967 Flammable Fabrics Act, which had not included coverage of hats. The district court rejected this contention and held that the 1953 standard (191–53) is applicable under the savings clause of the 1967 Act. However, the court went on to hold that the berets in question were not covered by the wording of Section

---

1. Two separate seizure warrants were executed by the Commission and a total of 6,385 berets were seized.

2(d), 15 U.S.C. § 1191(d), 67 Stat. 111 (1953), and were thus not properly seized by the Commission. The cross-motion for summary judgment was denied and an order was entered prohibiting the claimants from selling or otherwise disposing of the berets pending appeal. We agree with these rulings of the district court and affirm on the basis of the record presented to us on this appeal.

The 1967 Flammable Fabrics Act contains no specific reference to hats but applies to "any article of wearing apparel." [2] Section 2 of the Act (15 U.S.C. § 1192 (1970)) prohibits the sale or offering for sale in commerce of any article of wearing apparel which fails to conform to a flammability standard promulgated under Section 3 of the 1967 Act (15 U.S.C. § 1193 (1970)). That section provides for the adoption of such standards by the Secretary of Commerce upon a showing of a need to protect the public and after an appropriate hearing. No such standard has been promulgated for hats. However, when the 1967 Act was passed, Congress included a savings provision which provides:

"Notwithstanding the provisions of this Act, the standards of flammability in effect under the provisions of the Flammable Fabrics Act, as amended, on the day preceding the date of enactment of this Act, shall continue in effect for the fabrics and articles of wearing apparel to which they are applicable until superseded or modified by the Secretary of Commerce. . . . " § 11, P.L. 90–189, 81 Stat. 568, 1967 U.S.Code Cong. & Admin. News, p. 625; see also notes following 15 U.S.C. § 1191 (1970).

■ We agree with appellant and the *district court that the standard of*

flammability applicable to hats under the 1953 Flammable Fabrics Act is still effective since the Secretary of Commerce has promulgated no superseding or modifying standards.

The above-mentioned Section 2(d) of the 1953 Act (15 U.S.C. § 1191(d), 67 Stat. 111 (1953)), defined "article of wearing apparel," which is subject to the flammability standards of Section 4 (15 U.S.C. § 1193 (1953)) and to the prohibitions on sales or offering for sale in commerce in Section 3 (15 U.S.C. § 1192, 67 Stat. 111 (1953)), as meaning any article of clothing except hats, "Provided, however, That such hats do not constitute or form part of a covering for the neck, face or shoulders when worn by individuals." [3]

The district court decided that the berets in question were not subject to the provisions of the Flammable Fabrics Act, apparently for the reason that they did not "constitute or form part of a covering for the neck, face, or shoulders when worn by individuals," and that, therefore, there was no applicable standard of flammability for these berets. Under such a decision, their sale or introduction into commerce was not prohibited by Section 2 of the 1967 Act (15 U.S.C. § 1192 (1970)). As a basis for such conclusion, it is necessary to determine what is meant by the phrase "constitute or form part of a covering for the neck, face, or shoulders" and then to apply that standard to the berets in question on the basis of the record.

■ In determining the scope of the above-quoted proviso, the legislative history of the 1953 Act is pertinent. *See* United States v. An Article of Drug . . . Bacto-Unidisk, 394 U.S. 784, 799, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). Beginning in 1945 legislation

---

2. 15 U.S.C. § 1191(h) (1967). This section defines the term "product" as including any article of wearing apparel.

3. Act of June 30, 1953, Pub.L. No. 164–83, § 2, 67 Stat. 111, 15 U.S.C. § 1193(a) makes Commercial Standard 191–53 applicable to all articles of wearing apparel and provides that it "shall apply with respect to the hats . . . covered by section 1191(d) of this title, notwithstanding any exception contained in such Commercial Standard with respect to hats . . . ." This language was necessary to overcome the exception from coverage of all hats contained in § 2.2 of Commercial Standard 191–53.

was introduced in the Congress to prohibit the transportation in interstate commerce of highly flammable fabrics.[4] Several subsequent bills were introduced and in 1953 H.R. 5069 was enacted into law. The legislative purpose of all of these bills was to protect the public against the dangers of highly flammable wearing apparel. The Senate Report to H.R. 5069 cited numerous examples of injuries caused by "torch sweaters" and other such flammable garments.[4] Earlier versions of the legislation had exempted all hats, gloves and footwear from the coverage of the Act. The Federal Trade Commission, which had promoted flammable fabrics legislation because of its inability to deal with the problem under its existing statutory powers, suggested that the exemption of hats be limited by a proviso which would include within the coverage of the Act "such wearing apparel as hoods, baby bonnets, head scarves, or other headwear which provide a covering for the neck, face, or shoulders."[5] The Commission felt that absent such a limitation on the hat exception the Act would "leave the public exposed to the dangers against which the bill is intended to afford protection."[6] It thus appears that the above-quoted proviso to Section 2(d) of the 1953 Act was intended to include within the Act's coverage those hats which present a danger to the public, in light of their flammability, and their coverage of such a portion of the neck,

face or shoulders as to create the probability of serious injury if ignited. Such an analysis of the coverage of the Act focuses on the statutory purpose in order to interpret the imprecise language of the proviso.[7]

■■ Applying this standard to this record, we find that the berets in question do not come within the Section 2(d) proviso and are exempt from coverage, since the berets only cover the ears, part of the face, and part of the neck under the wording of paragraph 4 of the complaint. In addition, photographs showing the manner in which the berets are worn were submitted by both sides as parts of their affidavits. On the basis of this record, we agree with the findings and conclusions of the district court that the berets in question are exempt from coverage under the above-described provisions of the 1953 Act, as continued in effect by the 1967 Act, § 11 of P.L. 90–189, 81 Stat. 568, 1967 U.S.Code Cong. & Admin.News, p. 625.[8] Although we are concerned with the result reached in this appeal, the solution to the problem rests with the Secretary of Commerce[9] or Congress, or both. The judiciary must exercise restraint not to interfere in the legislative and executive functions of government lest it abdicate its role, mandated by the Constitution, of impartial decision-making.

Accordingly, we affirm the district court order of December 17, 1970, and

---

4. See Senate Report No. 400, 83 Cong. 1st Sess. (1953), U.S.Code Cong. & Admin.News 1953, p. 1722.

5. Senate Report No. 1869, 82 Cong. 2nd Sess. (1952).

6. Letter of James H. Mead, FTC Chairman, of March 19, 1953, appended to Senate Report No. 400, 83 Cong. 1st Sess. (1953).

7. *See* United States v. An Article of Drug . . . Bacto-Unidisk, 394 U.S. 784, 799, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969) ; SEC v. Ralston Purina Co., 346 U.S. 119, 124–125, 73 S.Ct. 981, 97 L.Ed. 1494 (1953).

8. While we disagree with claimants' contention that hats must cover *all* of the

face, neck or shoulders to come within the proviso, the district court was justified in deciding that the berets do not cover a sufficient portion of the face, neck or shoulders so as to create the probability of serious injury if ignited.

9. In view of Section 1 of the 1967 Act (15 U.S.C. § 1191), defining articles of wearing apparel as "an article of clothing worn or intended to be worn by individuals," the Secretary of Commerce is able at any time to establish an appropriate flammability standard in accordance with Section 3 of that Act (15 U.S.C. § 1193) covering berets of the type involved here. A copy of this opinion will be sent to the Secretary of Commerce to call his attention to the situation presented by this case.

note that portion of such order which prohibited the sale or distribution of the berets pending appeal expires as of the date on which the appeal is determined.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

In 1967, despite the strong, high level political pressure put upon the Congress and the Department of Commerce which embraces appellant "Federal Trade Commission," the revised Flammable Fabrics Act contained a savings clause carried over from the 1953 Act which clearly states that "Notwithstanding the provisions of this Act, the standards of flammability in effect under the provisions of the Flammable Fabrics Act, as amended, on the day preceding the date of enactment of this Act, shall continue in effect for the fabrics and articles of wearing apparel to which they are applicable until superseded or modified by the Secretary of Commerce pursuant to the authority conferred by the amendments made by this Act." [Follows 15 U.S.C. § 1191 in Supplement V 1965–1969].

It is not disputed and cannot be, that the standards applicable under the 1953 Act continue in effect under the 1967 Act and Commercial Standard 191–53 remains appropriate for such hats as "constitute or form part of a covering for the neck, face, or shoulders when worn by individuals." Despite the unmistakable meaning of the above clear language the appellees amazingly and successfully argued that the 1953 language in the savings clause merely meant hats which do not themselves cover any part of the neck, face or shoulders or are attached to some other garment which completely covers the neck, face or shoulders. That brazen theory was put forward by a witness who was not a general hat expert but merely claimed knowledge of ladies' hats and headwear.

The berets in question, affirmatively found to be dangerously flammable, are close fitting hats which concededly cover a part of the neck and face, and it is not denied that they also cover the ears. The appellees would have it that Congress, despite its specific language, only meant hats that totally cover the entire neck and face. What appellees avoid noting is that Congress was trying to protect the public from the very real danger of wearing a close fitting, flammable hat that could result in horrible injury before it could even be removed from a person's head. It is really a great pity that not only the expertness of the Commission and its sound common sense in obtaining the savings clause are brushed aside to perpetuate the political victory in the retention of headwear that no one should be allowed to inflict upon a public completely unaware of its terrible potential. The result before us is utterly wrong. I would reverse the judgment of the district court.